U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 1 9 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,      §
                               §
            Plaintiff,         §
                               §
VS.                            §   NO. 4:08-CV-450-A
                               §   (Consolidated with
LEONARD STEPHENS, ET AL.,      §   NO. 4:09-CV-183-A)
                               §
            Defendants.        §
                               §

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Currently pending before the court are cross-motions for summary judgment filed by plaintiff, United States of America, ("the government") and defendants Leonard Stephens and Carolyn Stephens ("the Stephenses").  This is a dispute involving a flowage easement on property near Lake Proctor in Comanche County, Texas ("the Easement Property").  Having considered the motions, the responses, the government's reply, and the applicable authorities, the court concludes that the government's motion should be granted, and the Stephenses's denied, for the reasons stated herein.

I.

<u>The Government's Application for a Permanent Injunction</u>

The government brings this action pursuant to Tex. Prop. Code § 22.001.  The government seeks a permanent injunction enjoining the Stephenses from engaging in any further construction of, or repairs to, structures fit for human habitation located within the Easement Property, and directing the Stephenses to identify the structures fit for human

habitation located within the Easement Property and to remove
those structures from the Easement Property.

## II.

### Facts Not Genuinely In Dispute

In 1961, the government acquired a flowage easement over
three tracts of land in Comanche County, Texas, as part of a
flood control project in connection with the construction of Lake
Proctor.  The tracts are described in a flowage easement deed
dated January 12, 1961, and recorded in Volume 306, Page 92 of
Comanche County's Deed Records.  The flowage easement allows
property owners to maintain fee ownership in their land while
allowing the government to operate Lake Proctor and control
flooding.  In pertinent part, the easement states that:

> [T]he owners of the described land [reserve] all such rights
> and privileges as may be used and enjoyed without
> interfering with or abridging the rights and easements
> conveyed to the United States of America, <u>provided that no
> structure for human habitation shall be permitted to remain
> or be constructed on said lands</u>, and provided further that
> with respect to said described lands, the written consent of
> the representative of the United States in charge shall be
> obtained for the type and location of any structure and/or
> appurtenance thereto now existing or to be erected or
> constructed in connection with said reserved rights and
> privileges . . . .

Pl.'s App. at 4 (emphasis supplied).

In July of 1990, in response to a flood, the Colonel and
District Engineer for the Army Corps of Engineers, William Brown,
issued a letter to all property owners within the Easement
Property ("the 1990 letter").  The 1990 letter specifically
addressed mobile homes and trailers on the Easement Property, and

states, in pertinent part, "I have decided not to oppose the repair or replacement of those existing structures which were damaged or destroyed by this year's flood.  I strongly encourage that all structures be kept 'mobile.'"  Def.'s App. B.  Around November or December of 1990, Willie and Lois Blair, ("the Blairs") placed a mobile home on their land within the Easement Property.

On October 20, 2004, the Stephenses, along with Stacy and Tracey Carr ("the Carrs"), purchased the Blairs's land within the Easement Property by warranty deed filed and recorded in Volume 850, Page 481 of the Deed Records of Comanche County, Texas.  The deed includes a reservation and exception to its conveyance and warranty as follows:

> Water Flowage Easement granted to the United States of America by Paul B. Gray, et ux, by instrument dated January 12, 1961, and recorded in Volume 306, Page 92, Deed Records of Comanche County, Texas.

Pl.'s App. at 9.  A mobile home was on the land when the Carrs and Stephenses purchased it from the Blairs.  The Stephenses had not seen the 1990 letter when they purchased the land from the Blairs.

In the summer of 2007, flooding again became a problem in the Easement Property.  In response, the Corps issued a press release that stated, in part:[1]

> Anyone having a dwelling on flowage easement . . . which was damaged or destroyed as a result of the recent flood event

---

[1]The government also sent a letter to the Carrs and the Stephenses on July 30, 2007, but the parties dispute whether the Stephenses received the letter.

3

will not be allowed to replace, repair, or build back their structure because of safety concerns.

Pl.'s App. at 25.

In August 2007, a park ranger discovered the Stephenses repairing their mobile home on the Easement Property.  On September 5, 2007, the Stephenses purchased the Carrs's interest in the property by warranty deed filed and recorded in Volume 893, Page 362, of the Deed Records of Comanche County, Texas.[2] The 2007 deed included the same paragraph regarding the flowage easement as did the 2004 deed.  The parties do not contest that the Stephenses had at least constructive notice of the flowage easement when they executed deeds for the property.  Nor does either party dispute that the Stephenses currently have a mobile home on the Easement Property.[3]

### III.

### Grounds for the Respective Motions

The government contends that it has an unambiguous flowage easement that prohibits the Stephenses from maintaining their mobile home on the Easement Property.  The clause prohibiting "structures for human habitation" is unambiguous and clearly applies to the Stephenses's mobile home.  The government argues that the easement is enforceable, and the 1990 letter did not

---

[2]The Stephenses's affidavits state that they purchased the Carrs's interest in 2006.  This dispute is not material to the resolution of the pending motions.

[3]The parties differ in their description of the mobile home and whether the mobile home is actually mobile.  This dispute, however, is not material to the resolution of the pending motions.

alter or amend the flowage easement because (1) a modification of the easement would have been a contract for the sale of property, which the 1990 letter could not have accomplished, (2) the 1990 letter does not run with the land, (3) the terms of the 1990 letter do not apply to the Stephenses's present situation, and (4) Colonel Brown did not have the authority to permit habitable structures within the easement.  Further, the government argues that it is not equitably estopped from enforcing the flowage agreement because (1) the government has made no affirmative representations to the Stephenses, and (2) estoppel is not a defense that works where the United States, in its sovereign capacity, is enforcing a public right or to protect a public interest.

The Stephenses contend that they are entitled to summary judgment on the basis of their affirmative defenses.  First, the Stephenses argue that the term "structure" in the easement is ambiguous, and the 1990 letter clarified the meaning of the term "structure" so as to exclude mobile homes or trailers.  The government's actions consented to the modification of the easement to permit the existence of mobile homes and trailers. The Stephenses also argue that the government is equitably estopped from revoking the permission granted to owners of the Easement Property in 1990 because the government's reversal of its consent constitutes an affirmative act of government misconduct.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 247 (1986).  The moving party has the initial
burden of showing that there is no genuine issue of material
fact.  <u>Anderson</u>, 477 U.S. at 256.  The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25
(1986).  Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.
<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.
574, 586 (1986).  The party opposing the motion may not rest on
mere allegations or denials of pleading, but must set forth
specific facts showing a genuine issue for trial.  <u>Anderson</u>, 477
U.S. at 248, 256.  To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]."  <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the

6

outcome of the action.  <u>Anderson</u>, 477 U.S. at 248.  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment.  <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

V.

## Dispositive Issues

The court need not address every argument raised by the parties to resolve the pending motions.  The government has shown, as a matter of law, that the easement in dispute applies to the property owned by the Stephenses, and that the Stephenses are maintaining a mobile home on their property.  The only two relevant questions to be resolved are:

A.   Whether the easement's prohibition against structures for human habitation can be read to exclude mobile homes;[4] and

B.   Whether the government is equitably estopped from requiring the Stephenses to remove all structures suitable for human habitation from the Easement Property.

---

[4]The Stephenses also seemingly argue that the government has implicitly or explicitly modified the easement by consent.  It is unclear whether the Stephenses intend to argue that even if the easement is unambiguous, the government has consented to a modification.  <u>See</u> Defs.' Mot. for Summ. J. at 2.  <u>But see</u> Defs.' Br. at 9-10.  Regardless, the authority cited by the Stephenses in support of their argument indicates that this argument is based on a theory of estoppel, which the court addresses in Section VI.B. herein.

VI.

Analysis

A.   Whether the Easement Can be Read to Exclude Mobile Homes

The Stephenses argue that the easement's terms are
ambiguous.  Under Texas law, basic principles of contract
construction and interpretation apply to determine the terms of
an express easement.  See Marcus Cable Assocs. v. Krohn, 90
S.W.3d 697, 700 (Tex. 2002).  Whether a contract is unambiguous
and interpretation of an unambiguous contract are both questions
of law.  Amigo Broad., L.P. v. Spanish Broad. Sys., Inc., 521
F.3d 472, 480 (5th Cir. 2008).  Ambiguity does not arise from a
lack of clarity or the parties' profferings of different
interpretations.  DeWitt County Elec. Coop., Inc. v. Parks, 1
S.W.3d 96, 100 (Tex. 1999).  Ambiguity arises "only after the
application of established rules of construction leaves an
agreement susceptible to more than one reasonable meaning."
Amigo Broad., L.P. 521 F.3d at 480 (quoting DeWitt County Elec.
Coop., Inc., 1 S.W.3d at 100) (brackets omitted).  Where the
agreement does not specifically define a term, that term must be
given its plain, ordinary, and generally accepted meaning unless
doing so would defeat the parties' intent.  DeWitt County Elec.
Coop., Inc., 1 S.W.3d at 101.  Under Texas law, if a contract on
its face is capable of being given definite legal meaning, parol
evidence cannot be used to render it ambiguous.  Ellis v. Am.
Biomedical Corp., 464 F.2d 531, 532 (5th Cir. 1972).

The court is satisfied that the terms of the easement are

8

not ambiguous.   The Stephenses argue that the term "structure" is ambiguous as to whether it includes a mobile home.   Webster's Dictionary defines "structure" as "something (as a building) that is constructed" and "something arranged in a definite pattern of organization."   Webster's New Collegiate Dictionary 1146 (1979). There is no reasonable argument that a mobile home does not fit within the plain meaning of the term "structure."   The Stephenses argue that, because the easement states that habitable structures are prohibited from remaining or being constructed on the Easement Property, the term "structure" could reasonably be interpreted to mean only structures affixed to the ground.   The court concludes that this interpretation is not reasonable, and the terms of the easement are not ambiguous.   Accordingly, as a matter of law, the easement's prohibition of structures for human habitation unambiguously applies to a mobile home.

B.    Whether the Government is Equitably Estopped From Requiring Removal of the Mobile Home

The Stephenses also argue that the government is equitably estopped from requiring the removal of the Stephenses's mobile home.   The doctrine of equitable estoppel is valid against the federal government only in narrow circumstances.   United States v. Bloom, 112 F.3d 200, 205 (5th Cir. 1997).   To establish estoppel against the government, a party must prove that (1) the party to be estopped was aware of the relevant facts, (2) the party to be estopped intended his act or omission to be acted upon, (3) the party asserting estoppel did not have knowledge of

9

the facts, and (4) the party asserting estoppel reasonably relied on the other party's conduct to his substantial injury.  <u>Id.</u>  In addition to all four factors, a party must prove that the government engaged in affirmative misconduct.  <u>Id.</u>

The summary judgment evidence adduces that the Stephenses did not rely on any of the government's conduct or representations when they purchased their property.  The Stephenses admit that they had not seen the 1990 letter when they purchased the land from the Blairs.[5]  Instead, they unreasonably relied on Willie Blair's spoken assurances that the easement did not apply to the mobile home.  Accordingly, the Stephenses's claim of estoppel fails.

VII.

O R D E R

For the reasons stated herein, the court concludes that the Stephenses's motion for summary judgment should be denied, and that the government's motion for summary judgment should be granted.  Therefore,

The court ORDERS that the Stephenses be, and are hereby, PERMANENTLY ENJOINED from engaging in any construction of, or repairs to, any structure fit for human habitation located on any land that they own within the Easement Property.

The court further ORDERS that the Stephenses be, and are hereby, PERMANENTLY ENJOINED to (1) inform the government of any

---

[5]The Stephenses also do not assert that they relied on the 1990 letter when they purchased the Carrs's interest in the land in 2007.

10

structure fit for human habitation situated, now or in the future, on land that they own within the Easement Property and (2) promptly remove any such structure from that land.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to all adjudications made herein.

SIGNED May 19, 2009.

JOHN McBRYDE
United States District Judge

11